UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NICOLE C.,

    **Plaintiff,**

              **Case No. 1:20-cv-7015**
  **v.**           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

## OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Nicole C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.  PROCEDURAL HISTORY

  On June 10, 2015, Plaintiff filed an application for benefits, alleging that she has been disabled since May 11, 2015. R. 120, 141, 282–83. Plaintiff's application was denied initially and upon reconsideration. R. 166–70, 173–77. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge. R. 180–81. Administrative Law Judge Lisa Hibner ("ALJ") held a

hearing on January 18, 2018, at which Plaintiff, who was represented by counsel, testified, as did

a vocational expert. R. 36–84.

In a decision dated May 14, 2018, the ALJ concluded that Plaintiff, who was 57 years old

on her alleged disability onset date, was not disabled within the meaning of the Social Security

Act at any time from May 11, 2015, the alleged disability onset date, through the date of that

decision. R. 145–60 ("the May 2018 decision"). In so concluding, the ALJ specifically found

that Plaintiff's seizures, osteoarthritis, and status post right shoulder surgery were severe, but that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled a listed impairment. R. 147–48. The ALJ found that Plaintiff had the residual functional

capacity ("RFC") for a full range of work at all exertional levels, with certain non-exertional

limitations:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of work at all
> exertional levels but with the following nonexertional limitations: the claimant is
> limited to occasionally climbing ramps and stairs; never climbing ladders, ropes or
> scaffolds; occasional balancing; occasional overhead reaching with the left upper
> extremity; occasional fingering and handling; and no exposure to workplace
> hazards such as moving machinery or unprotected heights. She is limited to simple,
> routine tasks.

R. 148. The ALJ found that this RFC did not permit Plaintiff to perform any past relevant work,

R. 152, but that there were jobs that existed in significant numbers in the national economy that

Plaintiff could nevertheless perform. R. 153.

Plaintiff sought review of the May 2018 decision. R. 225–27. In an order dated

September 4, 2018, the Appeals Council granted review of this decision and, finding error,

remanded the case to the ALJ with the following explanation and instructions:

2

• The hearing decision indicates that the claimant is not disabled under the framework of section 204.00 of the medical vocational guidelines based on the ability to perform jobs such as usher, furniture rental clerk, call out operator, and surveillance system monitor. However, the claimant was 60 years old as of the date of the decision. If she can only perform light and sedentary exertional jobs, this would be effectively equivalent to an individual who is disabled under Medical Vocational Rule 202.06. Thus, the claimant must be capable of performing medium or heavy exertional jobs to be found not disabled given her age absent the ability to perform past relevant work or other jobs using transferable skills. In this situation, it is incumbent upon the Administrative Law Judge to find jobs the claimant can perform at the higher exertional level because the regulations would find her otherwise disabled at the lighter exertional level.

• In addition, the Appeals Council notes that it appears inconsistent that the claimant has severe impairments of osteoarthritis and a history of right shoulder surgery yet has no exertional limitations but significant manipulative limitations. While the State agency did not opine of any exertional limitations, this opinion was offered in 2015, prior to the submission of the majority of the claimant's medical exhibits. Further development and evaluation are warranted.

Upon remand, the Administrative Law Judge will:

• Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record (20 CFR 404.1512-1513). The additional evidence shall include, if available, updated evidence from the claimant's treating sources. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the treating sources. The additional evidence may also include, as warranted, updated consultative physical and/or mental examinations and medical source statements about what the claimant can still do despite her impairments.

• If warranted and available, obtain evidence from a medical expert to clarify the onset, nature, severity, and limiting effects of the claimant's impairments (20 CFR 404.1527(f) and Social Security Ruling 96-6p).

• Based on the expanded record, give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).

• Obtain additional evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying

3

on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p). In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

R. 163−64.

Upon remand from the Appeals Council, the ALJ held a second hearing on March 14, 2019, at which Plaintiff, who was again represented by counsel, again testified, as did Michael Smith, who testified as a vocational expert, and John Kwok, M.D., who testified as a medical expert. R. 86−119. In a decision dated June 12, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 11, 2015, her alleged disability onset date, through the date of that decision. R. 10−20. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 19, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On November 12, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[2] On November 13, 2020, the case was reassigned to the undersigned. ECF No. 12. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

4

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) , 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016). The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

6

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §i 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's RFC and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION DATED JUNE 12, 2019, AND APPELLATE ISSUES

The Plaintiff was 57 years old on her alleged disability onset date, May 11, 2015. R. 19. Plaintiff met the insured status requirements under the Social Security Act through December 31, 2020. R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 11, 2015, her alleged disability onset date, through the date of the second administrative decision, June 12, 2019. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: seizures, osteoarthritis, and status post right shoulder surgery. *Id.* The ALJ also found that Plaintiff's diagnosed Raynaud's syndrome was not severe. R. 13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 13–19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a truck driver. R. 19.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 9,224 jobs as a patient transporter; and approximately 68,109 jobs as a hospital cleaner—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 20. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 11, 2015, her alleged disability onset date, through the date of that decision. *Id.*

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be

9

reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV.   RELEVANT MEDICAL EVIDENCE

### A.      Maria Molina, M.D., Consultative Examiner

On December 3, 2018, Maria Molina, M.D., conducted a consultative examination of Plaintiff. R. 802–04. Plaintiff reported arthritis in both shoulders; right rotator cuff tear in October 2017, for which she underwent surgical repair that same month; and steroid injection in her left shoulder. R. 803. Dr. Molina noted that Plaintiff complained of occasional loss of balance and "occasional pain in the shoulders, but only takes occasional aspirin." *Id.* Dr. Molina also noted that Plaintiff "is independent in her self-care activities and household tasks." *Id.*

Upon physical examination, Dr. Molina noted, *inter alia*, as follows:

> Bilateral shoulders have functional active range of motion except for extension. Her right hand can reach her back at T12 level and with the left shoulder, she "cannot do it at all." There is no localized tenderness on bilateral shoulders anteriorly or posteriorly. There are small round surgical healed scars on the right shoulder. Strength on bilateral upper and lower extremities is 4+/5. Sensation is intact and equal in both upper and lower extremities. Deep tendon reflexes are 1+ symmetrically with downgoing plantar responses. She has intact coordination without tremors.

> The patient can get on and off the table without help. She ambulated without an assistive device with a steady gait.

R. 803–04. Dr. Molina's impression was as follows:

> The claimant is a 60-year old female with history of chronic seizures. She has also been having cognitive deficits, especially short-term memory. Her seizure

medication had to be increased earlier this year due to recurrence of seizures. Her previous occupation (truck driver) is not compatible with her diagnosis. She also had right shoulder surgery, but has been having some pain in the left shoulder as well. She has gotten steroid injection to the left shoulder.

R. 804.

Dr. Molina also completed a check-the-box and fill-in-the-blank SSA-approved form entitled, "Medical Source Statement of Ability to do Work-Related Activities (Physical)." R. 805–09. Dr. Molina assessed Plaintiff's abilities to perform work-related activities on a regular and continuous basis.[3] *Id*. According to Dr. Molina, Plaintiff could frequently[4] lift and carry up to ten pounds and occasionally[5] lift and carry up to twenty pounds, but could never lift or carry more than twenty pounds. R. 805. Dr. Molina left blank questions related to Plaintiff's ability to sit/stand/walk. R. 805–06. Plaintiff could occasionally handle, finger, feel, and reach (in all directions other than overhead) with both hands, but could never reach overhead or push/pull with either hand. R. 806–07. Dr. Molina noted that Plaintiff was right-hand dominant and that she had "limited ROM on left more than right shoulder." R. 807. Plaintiff could never operate foot controls with either foot. *Id*. Dr. Molina went on to opine that Plaintiff could occasionally climb stairs and ramps, but could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. R. 808. According to Dr. Molina, Plaintiff could not hear and understand simple oral instructions and communicate simple information; she should avoid ordinary hazards in the workplace such as boxes on the floor, door ajar, or approaching people or vehicles; read very small print; or determine differences in shape and color of small objects such as screws, nuts, or bolts. *Id*. However, that Plaintiff could use a telephone to communicate; read ordinary newspaper

---

[3] "Regular and continuous basis" means eight hours a day, for five days a week, "or an equivalent work schedule." R. 805.
[4] "Frequently" "means from one-third to two-thirds of the time." R. 805.
[5] "Occasionally" "means very little to one-third of the time." *Id*.

or book print; and view a computer screen. *Id*. Plaintiff could occasionally tolerate humidity and wetness, but could never tolerate unprotected heights; moving mechanical parts; operating a motor vehicle; dust, odors, fumes, and pulmonary irritants; extreme cold; vibrations; or noise. R. 809. Plaintiff could not perform activities like shopping; travel without a companion of assistance; use standard public transportation; or sort, handle, use paper/files, but Plaintiff could ambulate without using a wheelchair, walker, or two canes or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed herself; and care for her personal hygiene. R. 809–10. When asked other work-related activities that were affected by Plaintiff's impairments, Dr. Molina wrote: "Claimant has cognitive / memory deficits." R. 810. According to Dr. Molina, the limitations noted above lasted or would last for twelve consecutive months. *Id*.

Additionally, on December 3, 2018, Dr. Molina completed a check-the-box and fill-in-the-blank form entitled, "NJ Division of Disability Determination Services Use of Hand-Held Assistive Device." R. 810–11. Dr. Molina indicated that Plaintiff could walk at a reasonable pace, and that Plaintiff did not use a hand-held assistive device. R. 810. When asked whether Plaintiff had any other limitations, Dr. Molina indicated that Plaintiff "has seizure disorder and short term memory deficits." R. 811.

### B.    Christopher Skidmore, M.D., treating neurologist

On February 1, 2019, Plaintiff's treating neurologist Christopher Skidmore, M.D., completed a two-page, check-the-box and fill-in-the-blank form entitled, "Medical Source Statement of Patient's Ability to Perform Work-Related Physical Activities." R. 726–27. If Plaintiff were placed in a competitive work situation in an ongoing basis, R. 726, Dr. Skidmore indicated that Plaintiff could not walk a city block without rest or severe pain. *Id*. Plaintiff could

sit and stand more than two hours at a time. *Id*. Asked what Plaintiff must do after sitting for this

long, Dr. Skidmore wrote, "NA." *Id*. According to Dr. Skidmore, Plaintiff could sit and

stand/walk (with normal breaks) at least six hours. *Id*. Dr. Skidmore responded, "NA" in

response to the following questions: how many times during an average workday he expected

Plaintiff take unscheduled breaks; how long (on average) Plaintiff must rest before returning to

work; and what symptoms cause a need for breaks. *Id*. Dr. Skidmore went on to opine that

Plaintiff could rarely lift less than ten pounds below her head and lift nothing greater than five

pounds above her head. *Id*. Plaintiff could use both hands for repetitive actions such as simple

grasping, pushing and pulling, and fine manipulation, and could use both feet for repetitive

movements as in operating foot controls. R. 727. Plaintiff could occasionally bend, stoop, squat,

crawl, and reach above shoulder level, but never climb. *Id*. According to Dr. Skidmore, Plaintiff

had a mild restriction in her ability to be exposed to marked changes in temperature and

humidity, but no restriction of activities around unprotected heights or moving machinery,

driving automotive equipment, and exposure to dust, fumes, and gases. *Id*. When asked to

estimate how often Plaintiff was likely to be absent from work as a result of her impairment/s or

treatment, Dr. Skidmore responded, "Cannot answer. Variable[.]" *Id*. Dr. Skidmore went on to

opine that Plaintiff's symptoms were likely to frequently interfere with the attention and

concentration needed to perform simple work tasks during a typical workday. *Id*.

Dr. Skidmore also completed a two-page, check-the-box and fill-in-the-blank form

entitled, "Clinical Assessment of Pain." R. 728–29. In response to six of the eight questions, Dr.

Skidmore responded, "NA[,]" including a question asking to what extent physical activity such

as, *inter alia*, moving of extremities, increase Plaintiff's degree of pain. *Id*. Dr. Skidmore left

blank the question asking him to estimate the frequency of interference if Plaintiff experiences

symptoms that interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. R. 729. In response to the eighth and last question asking for comments regarding any restrictions suffered by Plaintiff not listed on this form, Dr. Skidmore responded, "I treat patient for epilepsy, not pain[.]" *Id.*

### C.    John Kwok, M.D.,[6] Medical Expert

John Kwok, M.D., a Board-certified orthopedic surgeon, testified as a medical expert at the second administrative hearing, held on March 14, 2019. R. 94−105. Dr. Kwok testified that he had reviewed Exhibits 1F through 47F prior to the hearing. R. 95. He also testified that Plaintiff's impairments neither met nor medically equaled a listed impairment. R. 95−96. Considering Plaintiff's orthopedic impairments, Dr. Kwok opined that Plaintiff could work at a "medium work exertional level[,]" and "lift and carry up to ten pounds on a continuous basis, between 11 and 20 pounds on a frequent basis, between 21 and 50 pounds occasionally, and anything above 51 pounds, never." R. 97. Plaintiff could sit for eight hours in an eight-hour day and "walk for eight hours, five of the eight." *Id.* As to upper extremity limitations, Dr. Kwok opined that Plaintiff could reach overhead frequently and bilaterally; push/pull frequently with the left arm and continuously with the right arm; reach laterally, handle, finger, and feel continuously bilaterally. *Id.* Dr. Kwok also opined that Plaintiff could continuously push, pull, and pedal levers bilaterally; frequently climb stairs, ramps, ladders, scaffolds; continuously balance, stoop, kneel, and crouch; frequently crawl; frequently work in unprotected, exposed environments; frequently work in proximity to heavy and moving machinery. R. 98.

---

[6] Dr. Kwok's name appears as "Kwock" in the transcript of the second administrative hearing, R. 85−199, but the ALJ and the parties refer to this physician as "Kwok."

## V.     DISCUSSION

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Memorandum of Law*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. Plaintiff specifically argues that the ALJ failed to consider Plaintiff's severe impairment of osteoarthritis in her right shoulder and that the ALJ erred in weighing the opinions of Dr. Molina, the consultative examiner, and Dr. Kwok, the medical expert. *Id*. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, on remand from the Appeals Council, the ALJ determined that Plaintiff had the RFC to perform medium work subject to certain additional exertional and non-exertional limitations as follows:

15

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ramps or stairs, occasionally climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. She can perform occasional overhead reaching on the left and frequent fingering, handling and lateral reaching. She is limited to simple routine tasks.

R. 13. In making this determination, the ALJ detailed years of record evidence. R. 14−19. In considering Plaintiff's seizures and neurological/psychological status, the ALJ noted that Plaintiff experienced her first seizure in August 2014, and suffered additional seizures in 2015, for which medication was prescribed, but that an August 2015 EEG was read as normal; although Plaintiff suffered another seizure on August 3, 2016, treatment notes from 2018 indicated that she was seizure-free; throughout the relevant time period, physical and neurological examinations have indicated normal findings, including intact motor strength and sensation, normal gait and coordination, and alert and oriented behavior; an August 2015 detailed neurological examination by Christopher Skidmore, M.D., a treating neurologist, reflected unremarkable findings; treatment notes from 2016 and 2017 also revealed normal findings on physical and neurological examination; February 2018 records reflected complaints of balance issues and short-term memory and attention problems, but no seizure activity; Plaintiff presented with normal attention and concentration on mental status evaluation, and normal neurological examination findings; Plaintiff reported to Dr. Skidmore in June 2018 that she had experienced three seizure episodes but no such events since April 27, 2018; her neurological examination during that office visit was normal, and included a normal Romberg test, normal gait, full orientation, normal attention and concentration, normal speech and normal cranial nerve function; in office visits in August 2018 and November 2018, Plaintiff reported no seizure activity; in November 2018, Dr. Skidmore noted that Plaintiff's driving privileges had

16

been restored and that Plaintiff reported that Zoloft was helping; during an examination performed at that time, Plaintiff had a normal Romberg test, a normal gait, and normal cranial nerve function; although she had decreased concentration, she had normal attention, full orientation, normal speech, normal comprehension and good knowledge; Kenneth Goldberg, Ph.D., conducted a consultative examination on November 21, 2018, which reflected that Plaintiff drove to the appointment, had excellent hygiene, appeared younger than her stated age, showed no overt signs of psychopathology, was well spoken, manifested thoughtful and direct responses, was relaxed and well-engage, and had no problems with posture or gait; Plaintiff tested in the borderline to low average intellectual functioning range on the WAIS-IV IQ test, but her scores on the first three subtests were higher that her scores on each of the subsequent seven subtests, suggesting that fatigue could have been a factor in her overall test results. R. 14–15. Plaintiff reported left shoulder pain beginning in July 2015, resulting in difficulty reaching overhead, and weakness of the left upper extremity; there was tenderness and slightly decreased range of motion of the left shoulder, and 4+/5 muscle strength; her right shoulder had full range of motion and 5/5 muscle strength in all planes; a July 2015 CT scan of her left shoulder was normal; an August 2015 MRI of the left shoulder revealed rotator cuff tendinosis with partial articular surface tears involving the supraspinatus and infraspinatus, no full-thickness rotator cuff tear or tendon retraction, superior and anterior inferior labral tear, and degenerative changes of the glenohumeral joint with mild joint effusion; a cortisone injection was administered, which helped Plaintiff's pain "substantially"; when she presented again with left shoulder pain in March 2017, she was diagnosed with left shoulder osteoarthritis; examination of the left shoulder demonstrated elevation to 120 degrees, abduction to 100 degrees, and external rotation of 40 degrees, and she had pain at the end ranges of motion, but 5/5 strength; another cortisone

injection was administered; Plaintiff fell and injured her right shoulder in December 2017; a MRI showed a full thickness tear involving the supraspinatus and anterior infraspinatus tendons with retraction to the medial humeral head, for which Plaintiff underwent surgical repair in December 2017; in January 2018, Plaintiff reported that she was doing well, and was wearing a sling; she denied numbness, tingling, or instability, and she was happy with her progress; on examination in February 2018, Plaintiff exhibited limited strength on right shoulder abduction, but otherwise had 5/5 strength throughout; on June 8, 2018, an orthopedic surgeon, Surena Namdari, M.D., noted that Plaintiff was doing very well since her shoulder surgery, that she had done well with a left shoulder injection approximately fifteen months prior but that she was still having some difficulty with reaching, lifting, pushing and sleeping; on examination of the right shoulder, Plaintiff had 150 degrees elevation, 140 degrees abduction, 50 degrees external rotation and full strength; on examination of the left shoulder, Plaintiff had some mild pain at the end ranges of motion but good cuff strength; on September 21, 2018, Plaintiff reported to Dr. Namdari that, overall, her right shoulder was much better and she denied any instability, numbness or tingling; on examination Plaintiff had 150 degrees elevation, 140 degrees abduction, 50 degrees external rotation and full strength in each shoulder; on January 25, 2019, Dr. Namdari noted that Plaintiff had relatively mild left shoulder arthritis and that prior increased discomfort had decreased without treatment; Plaintiff declined another injection; on examination of the left shoulder, Plaintiff had 140 degrees elevation, 100 degrees abduction, 40 degrees external rotation and full cuff strength; in August 2015, state agency reviewing physician Mohammad Rizwan opined that Plaintiff was able to perform a range of work at all exertional levels and that Plaintiff had no limitations for lifting, carrying, sitting, standing and walking; that Plaintiff was able to occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and had unlimited

18

ability to balance, stoop, kneel, crouch, and crawl, but that Plaintiff should avoid even moderate

exposure to workplace hazards; on reconsideration in October 2015, state agency reviewing

physician Mary McLarnon, M.D., affirmed this assessment, but due to new evidence revealing

shoulder issues, Dr. McLarnon added a restriction for frequent left overhead reaching (the ALJ

assigned some weight to the state agency physical assessments with more weight accorded to Dr.

McLarnon's opinion because that opinion also considered Plaintiff's shoulder impairment); Dr.

Molina's consultative examination indicated that Plaintiff had functional active range of motion

of both shoulders, except for extension; Plaintiff's right hand could reach her back at the Tl2

level although she could not perform the same action with her left shoulder; Plaintiff had no

localized tenderness of the shoulders anteriorly or posteriorly bilaterally and had 4+/5 strength in

the upper and lower extremities bilaterally; Plaintiff's sensation was intact and equal in both

upper and lower extremities and she had intact coordination without tremors, was able to get on

and off the examining table without help, and ambulated without an assistive device with a

steady gait; the ALJ assigned great weight to the opinions of the medical expert Dr. Kwok, who

testified that Plaintiff could perform medium exertional work. R. 15–19. When crafting the RFC,

the ALJ explained that Plaintiff's shoulder impairments

> support some exertional limitations in [her] ability to lift and carry but
> examination findings showing normal strength support a conclusion that [she] is
> capable of medium exertional work. [Plaintiff's] reports of confusion and memory
> issues have been accounted for in limiting her to the performance of simple,
> routine tasks.

R. 17. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186

F.3d at 429.

Plaintiff, however, contends the RFC fails to include all limitations flowing from her right and left shoulder impairments. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 8−14; *Plaintiff's Reply Brief*, ECF No. 17, p. 1. Plaintiff specifically complains that the ALJ's RFC fails to include any limitations as to her right shoulder, in violation of the order from the Appeals Council. *Id.* Plaintiff also contends that the ALJ's observation at the first hearing that Plaintiff 's inability to lift both her hands overhead support a greater limitation in the use of Plaintiff's left shoulder. *Id.* Plaintiff's arguments are not well taken.

As a preliminary matter, after the second administrative hearing, the ALJ limited Plaintiff to medium exertional work, R. 13, in contrast to the first RFC for a full range of work at all exertional levels found after the first administrative hearing, R. 148. Plaintiff disagrees with the ALJ's second RFC, which limits Plaintiff to "frequent fingering, handling and lateral reaching" bilaterally and additional limitations applicable to only her left side. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 13; *Plaintiff's Reply Brief*, ECF No. 17, p. 1. However, the evidence recited by the ALJ and detailed above provides substantial support for the RFC found by the ALJ, including, *inter alia*, greater range of motion on her right side than on her left side, treatment records reflecting 4+/5 or 5/5 upper extremity strength, Dr. Molina's finding that Plaintiff had "functional active range of motion" in her shoulders bilaterally, and Dr. Kwok's finding that Plaintiff could perform medium exertional work.

To the extent that Plaintiff complains that the ALJ recognized her status post right shoulder surgery as a severe impairment at step two, but did not include any limitations flowing from that severe impairment at step four, *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 13−14, that argument is also unavailing. The United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular

20

finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id.* (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id.*

Plaintiff's challenge to the RFC determination based on her left shoulder impairment are similarly unavailing. Plaintiff bases that challenge on the ALJ's observation during the first administrative hearing of Plaintiff's inability to lift her arms over her shoulders and on Dr. Molina's opined limitations affecting Plaintiff's bilateral upper extremities. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 13–14; *Plaintiff's Reply Brief*, ECF No. 17, p. 1. However, the finding made following the first hearing on January 18, 2018, R. 52, predated Dr. Kwok's testimony during the second hearing on March 14, 2019, R. 94–105, to which the ALJ reasonably accorded great weight for the reasons discussed in greater detail later in this decision. R. 18–19. The ALJ also reasonably discounted the extreme limitations found by Dr. Molina who noted, upon examination, that Plaintiff's bilateral shoulders had "functional active range of motion except for extensions." R. 18, 803. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to

reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].”); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (“When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'”) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff goes on to challenge the ALJ's evaluation of, *inter alia*, the opinions of the consultative examiner, Dr. Molina, and the ALJ's decision to assign “little weight” to those opinions. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 14–17; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–4. Plaintiff specifically contends that the ALJ failed to weigh these opinions in accordance with applicable regulations, including 20 C.F.R. § 404.1527(c)(3), and contests the reasons given for discounting Dr. Molina's opinions. *Id*. Plaintiff's arguments are not well taken. ALJs must evaluate “every medical opinion.” 20 C.F.R. § 404.1527(c).[7] “Medical opinions” are “statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.” *Id.* at § 404.1527(a)(1). In deciding the weight to assign to a particular medical opinion, an ALJ considers the following factors: (1) the examining relationship; (2) the treatment relationship, including length of treatment and nature and extent of the treatment; (3) the supportability of the evidence; (4) the consistency with other evidence; (5) the specialization of the professional; and (6) other factors brought to the attention of the ALJ. *Id*. at § 404.1527(c)(1)–(6). However, “an ALJ need not explicitly discuss each factor” in the decision.

---

[7] This section applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. As previously noted, Plaintiff's claim was filed on June 10, 2015.

*Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (collecting cases). "Instead, an ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether [the ALJ's] reasoning accords with the regulation's standards.'" *Id.* (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Podvorec v. Berryhill*, No. 2:17-CV-00137, 2017 WL 3705062, at *8 (W.D. Pa. Aug. 28, 2017) ("Although the ALJ did not explicitly spell out all of these factors in her decision, it contains enough detail for this Court to meaningfully review it.").

Here, in reaching the RFC determination, the ALJ assigned "little weight" to Dr. Molina's opinions, reasoning as follows:

> On December 3, 2018, the claimant was evaluated by consultative examiner Maria Molina, M.D. (35F). On examination, the claimant had functional active range of motion of both shoulders, except for extension. Her right hand could reach her back at the Tl2 level but she reported she could not do it with her left shoulder. The claimant had no localized tenderness of the bilateral shoulders anteriorly or posteriorly. She had 4+/5 strength in the upper and lower extremities bilaterally. Sensation was intact and equal in both upper and lower extremities. She has intact coordination without tremors. She was able to get on and off the examining table without help. She ambulated without an assistive device with a steady gait. Dr. Molina concluded that the claimant could occasionally lift and carry up to twenty pounds. She concluded that the claimant could never reach overhead but could occasionally reach in all other directions. She concluded that the claimant could never push or pull with either hand but could occasionally handle, finger and feel with either hand. She concluded that the claimant could not operate foot controls. She concluded that the claimant could occasionally climb stairs and ramps but never climb ladders or scaffolds and never balance, stoop, kneel, crouch or crawl. The undersigned gives little weight to Dr. Molina's opinion. It is based on a one time examination and seems to significantly overstate the degree of the claimant's limitations based on her own examination findings and treating source records and opinion evidence showing a greater capacity for performing exertional and non-exertional work related activities as discussed above.

R. 18. Although the ALJ did not explicitly address each of the Regulation's factors, she sufficiently explained her evaluation of Dr. Molina's opinions to permit meaningful review. *Id.*

Specifically, the ALJ considered Dr. Molina's relationship to Plaintiff, the supportability of the opinion, and the consistency of Dr. Molina's opinions with other evidence, including Dr. Molina's own findings, treating source records, and opinion evidence. *Id*.; *see also* 20 C.F.R. § 404.1527(c)(1), (3), (4). For example, the ALJ noted that Dr. Molina, upon physical examination of Plaintiff, found that Plaintiff had "functional active range of motion of both shoulders, except for extension" with "no localized tenderness of the bilateral shoulders anteriorly or posteriorly" and "4+/5 strength in the upper and lower extremities bilaterally" and "intact and equal" sensation in both upper and lower extremities as well as "intact coordination without tremors." R. 18. The ALJ concluded that these benign findings reflected a greater capacity to perform exertion than Dr. Molina's opined limitations, including, *inter alia*, the opinions that Plaintiff could only occasionally lift and carry up to twenty pounds, could never reach overhead but could occasionally reach in all other directions, and could never push or pull with either hand but could occasionally handle, finger and feel with either hand. *Id.* The ALJ also found that Dr. Molina's more extreme opinions in this regard were not supported by or consistent with the treatment records, which reflected, *inter alia*, injections that helped her left shoulder pain "substantially"; 4+/5 or 5/5 bilateral shoulder strength; the June 2018 findings of treating orthopedic surgeon Dr. Namdari that Plaintiff's right shoulder had 150 degrees elevation, 140 degrees abduction, 50 degrees external rotation and full strength, and on examination of the left shoulder, Plaintiff had only some mild pain at the end ranges of motion and good cuff strength; in September 2018, Plaintiff reported to Dr. Namdari that her right shoulder, overall, was much better than it had been preoperatively and denying instability, numbness, or tingling; Dr. Namdari noted, upon examination at that time, 150 degrees elevation, 140 degrees abduction, 50 degrees external rotation and full strength in each shoulder; in January 2019, Plaintiff reported to Dr. Namdari

that her discomfort had decreased and that her symptoms were not bad enough for an injection; Dr. Namdari's observations on examination of the left shoulder of 140 degrees elevation, 100 degrees abduction, 40 degrees external rotation, and full cuff strength. R. 15−16. In addition, substantial evidence supports the ALJ's finding that the opinion evidence showed a greater capacity for performing exertional and non-exertional work related activities, including, *inter alia*, the opinions of state agency reviewing physicians, Dr. Rizwan and Dr. McLarnon, and the opinions of Dr. Kwok, the medical expert. R. 17−19. The Court therefore finds no error in the ALJ's reasoning in this regard. *See* 20 C.F.R. § 404.1527(c)(1), (3), (4); *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59−60 (3d Cir. 2017) (finding that the ALJ "appropriately gave less weight" to medical opinions where although one physician concluded the plaintiff "was limited in his work abilities, his report lacked adequate support for this determination" and that physician's "conclusion conflicted with both [the plaintiff's] self-reported daily activities and [the physician's] own positive reports after [] surgery" and discounted another physician's opinion as "inconsistent with the record evidence[,]" including that physician's "own findings that [the plaintiff] maintained normal grip strength and intact reflexes"); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating physician's opinion"); *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005) (holding that the ALJ did not err by refusing to assign controlling weight to a treating physician's opinion that "was itself internally inconsistent"); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *7 (D.N.J. Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at issue upon a reasonable reading of seemingly contradictory treatment notes.").

25

Plaintiff complains that "the ALJ made no mention of the fact that Dr. Molina is a specialist in the field for which her opinion was offered, which would lend credence to her opinion." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 17 (citing 20 C.F.R. § 404.1527(c)(5)); *Plaintiff's Reply Brief*, ECF No. 17, p. 5. To the contrary, the ALJ explicitly considered Dr. Molina's report, which clearly identified Dr. Molina's medical specialty as "Physical Medicine & Rehabilitation." R. 18, 715. Even if the ALJ erred by not expressly considering Dr. Molina's specialization, any such error was harmless. While Plaintiff generally insists that Dr. Molina was "in a better position to examine the Plaintiff and provide an opinion of her limitations on the whole contemplating the whole medical picture[,]" *Plaintiff's Reply Brief*, ECF No. 17, p. 5, Plaintiff has not explained how consideration of this specialty would have changed the weight given to Dr. Molina's opinion in light of the fact that her extreme opinions were inconsistent with her own examination findings, Plaintiff's treatment records, and other opinion evidence. *Id.*; *Plaintiff's Memorandum of Law*, ECF No. 15, p. 17; *see also Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Fuehrer v. Saul*, No. CV 16-5248, 2019 WL 5550634, at *5 (E.D. Pa. Oct. 28, 2019) ("Here, too, any error by the ALJ in failing to explicitly address the factors [under 20 C.F.R. §§ 404.1527(c)] cited by Plaintiff is harmless, as Plaintiff has not shown how consideration of these factors would have affected his evaluation of either opinion, given his conclusion that the opinions were inconsistent with the physicians' own treatment notes.") (collecting cases).[8]

---

[8] Notably, as discussed in more detail below, the ALJ expressly considered that Dr. Kwok, to whose opinion the ALJ assigned "great weight" and which supported the RFC, has a specialty in orthopedic surgery. R. 19.

Plaintiff further challenges the ALJ's consideration of Dr. Molina's opinions, complaining that the ALJ improperly discounted those opinions because it was a one-time examination, yet the ALJ went on to credit Dr. Kwok who merely testified at the second administrative hearing and never examined Plaintiff. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 17 ("The hypocrisy is astounding."); *Plaintiff's Reply Brief*, ECF No. 17, p. 6. The Court is not persuaded that this issue requires remand. As noted above, the examining relationship is certainly a relevant factor to consider when determining the weight to be assigned to a medical opinion. 20 C.F.R. § 404.1527(c)(1). However, as previously explained, this factor was just one of the many factors that the ALJ considered when explaining why she discounted Dr. Molina's extreme opinions. R. 18.

Plaintiff also challenges the ALJ's evaluation of Dr. Kwok's opinions, arguing that the ALJ erred in assigning "great weight" to those opinions for several reasons. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17–22; *Plaintiff's Reply Brief*, ECF No. 17, pp. 4–7. Plaintiff's arguments are not well taken. In crafting the RFC determination, the ALJ assigned "great weight" to Dr. Kwok's opinions, reasoning as follows:

> At the hearing, Dr. Kwok opined that the claimant could perform medium exertional work. He concluded that the claimant could occasionally lift and carry up to fifty pounds, sit for eight hours and stand/walk for eight hours. He concluded that the claimant could frequently reach overhead bilaterally and push and pull with the upper extremities frequently on the left and continuously on the right. He concluded that the claimant could continuously reach laterally, handle, finger and feel bilaterally. He concluded that the claimant could frequently climb stairs, ramps, ladders, ropes and scaffolds. He concluded that the claimant could balance, stoop, kneel and crouch continuously and crawl frequently. The undersigned gives great weight to Dr. Kwok's opinion based on his specialization in orthopedic surgery, his disability program knowledge, his opportunity to review the entire medical evidence of record and the general consistency of his opinion with the overall medical evidence of record discussed above. His opinion is also generally consistent with the claimant's wide range of reported activities including the claimant's ability to attend to self-are tasks, cook, launder, clean, shop, walk, bike,

and drive. She socializes with family, and is able to complete paperwork, use the computer, manage money, and watch television (4E, 7E, 15E).

R. 18−19. Substantial evidence supports the ALJ's assessment in this regard. 20 C.F.R. § 404.1527(c)(1), (3)−(6); *cf. Smith*, 359 F. App'x at 316;); *O'Neill*, 2019 WL 413539, at *7.

Plaintiff advances several challenges to the ALJ's consideration of Dr. Kwok's opinions. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17−22; *Plaintiff's Reply Brief*, ECF No. 17, pp. 4−7. Plaintiff first contends that, although the ALJ assigned "great weight" to Dr. Kwok's opinions because of, *inter alia*, "his opportunity to review the entire medical evidence of record[,]"Dr. Kwok actually conceded at the second administrative hearing that he had not reviewed Exhibits 48F through 50F. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17−18 (citing R. 99); *Plaintiff's Reply Brief*, ECF No. 17, pp. 6−7 (same). Plaintiff complains that he raised this objection during the hearing, but that the ALJ failed to address this issue. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17−18 (citing R. 117); *Plaintiff's Reply Brief*, ECF No. 17, pp. 6−7 (same). This Court is not persuaded that this issue requires remand. As a preliminary matter, this was but one factor that the ALJ considered in explaining the weight assigned to Dr. Kwok's opinions. R. 19. Moreover, as the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, pp. 15−16, Exhibits 48F through 50F do not contain evidence that support remand. For example, Exhibit 48F in simply a December 2017 metabolic panel, R. 814−15, Exhibit 50F is a one-page note signed by a social worker in March 2018, attesting to the fact that Plaintiff was attending therapy sessions, R. 829, and Exhibit 51F contains a March 2019 psychiatric assessment by Omair H. Abbasi, M.D., and Dr. Abbasi's psychiatric treatment notes from July 2018, to February 2019, R. 830−65. The only exhibit that addresses Plaintiff's shoulder impairments is Exhibit 49F, which contains treatment notes from

Rothman Orthopedics. R. 816–28. However, the majority of these treatment notes are

duplicative of the treatment notes appearing in Exhibit 42F, R. 774–80, which Dr. Kwok did

review. *See* R. 95 (reflecting Dr. Kwok's testimony that he reviewed Exhibits 1F through 47F);

*compare* R. 774 (treatment note dated September 21, 2018), *with* R. 817–18 (first page same as

R. 774, second page blank except for patient information and date); R. 775 (treatment note dated

July 13, 2018), *with* R. 819–20 (first page same as R. 775, second page blank except a few

findings reflecting gastrointestinal, hematology, genitourinary, neurologic findings, and "Yes"

for painful joints and muscle aches); R. 776 (treatment note dated March 23, 2018), *with* R. 823

(same); R. 777 (treatment note dated February 2, 2018), *with* R. 824 (same); R. 778 (treatment

note dated January 5, 2018), *with* R. 825–26 (first page same as R. 778, second page blank

except for patient information and date). Of the three remaining treatment notes contained in

Exhibit 49F that do not appear in Exhibit 42F, the earliest-dated note, dated December 1, 2017,

R. 827–28, indicated that Plaintiff had fallen and hurt her right shoulder in November 2017, and

recommended a MRI. *Id*. The second note, dated June 8, 2018, R. 821–22, reflected that Plaintiff

was "doing very well" following her right shoulder surgery, that she had done "well" following

an injection in her left shoulder, and that, upon examination, Plaintiff was "in no acute distress"

and that "the right shoulder demonstrates elevation 150 degrees, abduction to 140 degrees and

external rotation to 50 degrees. She has 5/5 strength. On the left side she has some mild pain at

the end ranges of motion with good cuff strength." R. 821. An injection had been administered to

the right shoulder and Plaintiff "experienced notable relief of symptoms" although she was

advised that the relief might be temporary. *Id*. In the third and most recent note dated January 25,

2019, R. 816, Dr. Namdari noted that Plaintiff's arthritis in her left shoulder "is relatively mild,"

that Plaintiff's recent discomfort had "settled down on its own somewhat[,]" and that Plaintiff

denied numbness, tingling, and instability, and "currently does not feel as though her symptoms are bad enough for an injection." *Id*. Upon physical examination, Plaintiff was in "no acute distress" and "[e]xamination of the left shoulder demonstrates elevation 140 degrees, abduction 100 degrees, and external rotation 40 degrees. She has pain at the end ranges of motion. She has 5/5 cuff strength." *Id*. Notably, Plaintiff does not explain how any evidence contained in Exhibits 48F through 51F supports a different RFC determination or requires a different result. *See Plaintiff's Memorandum of Law*, ECF No. 15, pp. 17−18; *Plaintiff's Reply Brief*, ECF No. 17, pp. 6−7. In short, even if the ALJ erred in finding that Dr. Kwok had reviewed the entire medical record, any such error was harmless based on this record. *Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff next contends that the ALJ erred in assigning "great weight" to Dr. Kwok's opinions because it was based, at least in part, on a 2015 report of Plaintiff's activities, which did not reflect a true representation of her current limitations, such as her difficulties with self-care that Plaintiff described during the first administrative hearing on January 18, 2018. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 18−19 (citing, *inter alia*, R. 53−56, 63). To the extent that the ALJ may have erred in citing to evidence from 2015, any such error is harmless. As a preliminary matter, this factor was just one of many that the ALJ considered when explaining why she accorded "great weight" to Dr. Kwok's opinions. R. 19. Moreover, although Plaintiff points to her subjective testimony in her challenge to the ALJ's evaluation of Dr. Kwok's opinions, the ALJ explicitly considered and discounted Plaintiff's subjective statements as not entirely consistent with the medical evidence and other evidence in the record. R. 14. Significantly, Plaintiff does not expressly challenge the ALJ's finding in this regard.

Plaintiff contends that the ALJ should have discounted Dr. Kwok's opinions as inconsistent with the opinions of Dr. Molina and Dr. Skidmore and as internally inconsistent. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 20−21; *Plaintiff's Reply Memorandum*, ECF No. 17, p. 6. Plaintiff's arguments are not well taken. For the reasons previously explained, the ALJ appropriately discounted Dr. Molina's extreme opinions. Similarly, the ALJ reasonably discounted Dr. Skidmore's opinions because, *inter alia*, Plaintiff's "physical and neurological examinations, as well as EEG studies, have consistently shown normal findings[,]" Plaintiff "is able to participate in a wide range of daily activities," and, when weighing Dr. Skidmore's February 2019 opinion, the ALJ expressly noted that "examination findings showing largely normal neurological function and full shoulder strength support a finding that the claimant could lift and carry fifty pounds more than rarely." R. 17−18. Plaintiff has not explained how the ALJ erred when discounting Dr. Skidmore's opinions. Notably, the ALJ also relied on the state agency reviewing physicians' opinions, R. 16−17, which support Dr. Kwok's opined limitations, as do the relatively normal examination findings described above. R. 15−18.

Plaintiff also challenges Dr. Kwok's opinions by insisting that the doctor's testimony that injections are contraindicated for soft tissue tears is inconsistent with findings from orthopedic specialists at the "Rothman Institute" who administered injections to Plaintiff. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 20−21 (citing R. 103). However, the Court is not persuaded that a conflict exists or, even if there is a conflict, that the conflict requires remand. As previously noted, evidence from Rothman Orthopedics reflected benign findings and no functional limitation that would require greater restrictions in the RFC. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x  at

201 (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler.*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson*, 402 U.S. at 399). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak,* 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff's insistence that Dr. Kwok's hearing testimony was internally inconsistent likewise does not require remand. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 20. The Court is not persuaded that Dr. Kwok testified inconsistently when he stated that a MRI from August 2015 revealed soft tissue injuries, R. 101, but later testified that not all the pathology present in that MRI was soft tissue damage because there was cartilage tearing as well, R. 103. In any event, even if there was some inconsistency in this specific testimony, Plaintiff has not explained how it undermines the ALJ's decision to assign great weight to Dr. Kwok's findings in light of his orthopedic specialization, the consistency of his opinions with those of the state agency reviewing physicians, and the treatment notes previously described that reflect generally benign findings.

Finally, Plaintiff argues that, even if the ALJ appropriately assigned great weight to Dr. Kwok's opinions, she erred in failing to incorporate all of his opined limitations in the RFC.. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 17, p. 7. Plaintiff specifically contends that the ALJ erred in failing to incorporate Dr. Kwok's

limitations of frequent overhead reaching bilaterally and frequent pushing and pulling on the left side; instead, the RFC found by the ALJ contains a limitation to only occasional overhead reaching on the left and no push/pull limitation. *Id.* (citing R. 13, 97). The Court finds this error, if indeed any error occurred, to be harmless. The vocational expert testified that the limitations articulated by Dr. Kwok in this regard would not preclude the jobs that he had previously identified and which the ALJ ultimately found were available to Plaintiff, namely, transporter, patients (DOT 355.677-014) and cleaner, hospital (DOT 323.687-010). R. 20 (reflecting ALJ's step five finding that other jobs such as transporter, patients (DOT 355.677-014) and cleaner, hospital (DOT 323.687-010) exist in significant number in the national economy that Plaintiff could perform), 112 (reflecting the first hypothetical that includes, *inter alia*, limitations of occasional overhead reach bilaterally and push/pull frequent with the left and continuous on the right and occasional fingering and handling), 114–15 (reflecting that same hypothetical but with frequent fingering and handling and confirming the jobs of transporter, patients (DOT 355.677-014) and cleaner, hospital, (DOT 323.687-010) would be available to such a hypothetical individual). Accordingly, any error in this regard is harmless because Plaintiff has not shown how remanding on this basis would result in a different outcome. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of Dr. Molina and Dr. Kwok.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 2, 2021                                                     *s/Norah McCann King*

                                                   NORAH McCANN KING

                                     UNITED STATES MAGISTRATE JUDGE